| Exporter | PH: +886 4 2329 8850 | HOUSE BILL OF LADING COPY | House Bill of Lading |
|---|---|---|---|
| KAISER TECHNOLOGY CO., LTD<br>31F, NO. 185, SEC.1, CHUNG KONG ROAD<br>TAICHUNG, TAIWAN | | | HKG00497679 |

| Consignee |
|---|
| PASCO SCIENTIFIC<br>1010 FOOTHILLS BLVD,<br>ROSEVILLE, CA 95747-7100<br>USA |

**AIT WORLDWIDE LOGISTICS**

FMC NO.025018N

Received by the Carrier, the Goods as specified below in apparent good order and condition unless otherwise stated, to be transported to such place as agreed, authorised or permitted herein and subject to all the terms and conditions appearing on the front and reverse of this Bill of Lading to which the Merchant agrees by accepting this Bill of Lading, any local privileges and customs notwithstanding.
The particulars given below as stated by the shipper and the weight, measure, quantity, condition, contents and value of the Goods are unknown to the Carrier.
In WITNESS, whereof one (1) original Bill of Lading has been signed if not otherwise stated below, the same being accomplished the other(s), if any to be void. If required by the Carrier one (1) original Bill of Lading must be surrendered duly endorsed in exchange for the Goods or delivery order.

| Notify Party |
|---|
| |

| Vessel | Voyage |
|---|---|
| ONE APUS | 006E |

| Place of Receipt | Port of Loading | Destination (if on carr) | Release |
|---|---|---|---|
| HONG KONG, HONG KONG | HONG KONG | OAKLAND, UNITED STATES | ORIGINAL BILL REQUIRED AT DESTINATION |

| Shipped On Board | Port of Discharge | Freight Payable At | No. of Original B/L |
|---|---|---|---|
| 17-Nov-20 | OAKLAND, UNITED STATES | FREIGHT COLLECT | 3 (THREE) |

Details of cargo as declared by Shipper — Declared Cargo Value U.S. $_____

| Marks and Numbers | Description of Goods | Gross Mass | Cubic(M3) |
|---|---|---|---|
| PASCO<br>USA<br>P/NO.1-1<br>P/NO.2-5<br>MADE IN CHINA | 272 Carton(s)<br>PLASTIC PARTS<br>PO. 184032<br>P/N: PS-3213 Light Sensor w/t Lithium Metal cell battery 480pcs(PI970)<br>PO. 183904<br>P/N: PS-3211 Voltage Sensor w/t Lithium Ion cell battery 500pcs (PI967-2)<br>PO. 182330<br>P/N: PS-3203 Pressure Sensor w/t Lithium Ion cell battery 499pcs(PI967-2)<br>PO. 182346<br>P/N: PS-3219 Motion Sensor w/t Lithium Ion cell battery 499pcs(PI967-1)<br>PO. 181781<br>P/N: PS-3209 Weather sensor w/t Lithium Ion cell battery 500pcs (PI967-1)<br>PO. 182040<br>P/N: 003-16210 Wireless O2 Sensor w/t Lithium Ion cell battery 1000pcs (PI967-1)<br>PO. 182308<br>P/N: ME-1240 Smart cart w/t Lithium Ion cell battery 1000pcs (PI967-2) | 1350.9 KG | 8.7 M3 |

P.O. # 184032,182330,182346,181781,182040,179314,182308,184164
Consol Ref: C00397810

| Container | Seals | Type | Weight(KG) | Volume(M3) | Packages | Mode |
|---|---|---|---|---|---|---|
| KKFU6742392 | HKA024218 | 40HC | 1350.9 | 8.7 | 272 CTN | CFS/CFS |
| 272 CTN - 1350.9 KG - GEN | | | | | | |

| Delivery Agent | Freight and Charges |
|---|---|
| AIT WORLDWIDE LOGISTICS, INC.<br>4040 VISTA PARK CT STE 20<br>SACRAMENTO CA 95834<br>UNITED STATES<br>Phone: +1 916-929-9800  Fax: +1 916-929-9801 | |

In witness of the contract herein contained, the above stated number of originals Bills of Lading have been issued, one of which to be accomplished, the other(s) being void.

AS CARRIER

| Place Of Issue: | Date Of Issue: | |
|---|---|---|
| HONG KONG | 11-Nov-20 | |

| Place of Acceptance | Place of Delivery | Total No. of Packages |
|---|---|---|
| HONG KONG | OAKLAND, UNITED STATES | TWO HUNDRED AND SEVENTY TWO CARTON(S) |

HBoL-EAG

047520028911

# CONTINUATION PAGE

# BILL OF LADING - HKG00497679

**CONSIGNOR**
KAISER TECHNOLOGY CO., LTD
31F, NO. 185, SEC.1, CHUNG KONG ROAD
TAICHUNG, TAIWAN

**CONSIGNEE**
PASCO SCIENTIFIC
1010 FOOTHILLS BLVD,
ROSEVILLE, CA 95747-7100
USA

**NOTIFY PARTY**

Phone:
Fax:

**GOODS COLLECTED FROM**
HONG KONG

**GOODS DELIVERED TO**
OAKLAND, UNITED STATES

**GROSS WEIGHT**
1350.9 KG

**PACKAGE QUANTITY**
272 CTN (OUTER)

**ETD** 18-Nov-20

**ETA** 16-Dec-20

**VOLUME**
8.7 M3

| Marks & Numbers | Goods Description | Gross Wt. | Volume |
|---|---|---|---|
| | PO. 184164 | | |
| | P/N: 648-10016 Body, Super pulley 3000pcs | | |
| | P/N: 648-10342 Pulley, Super 3000pcs | | |
| | P/N: 648-10020 Clamp, Super pulley 1658pcs | | |
| | P/N: 648-11200 Cap, LH Bearing 3000pcs | | |
| | P/N: 648-11201 Cap, RH Bearing 3000pcs | | |
| | PO. 184038 | | |
| | P/N: 650-16642 Bottom enclosure 267pcs | | |
| | P/N: 650-16641 Top enclosure 204pcs | | |
| | | | |
| | HS CODE: 9023.00 | | |
| | | | |
| | 272 CTNS ON 5 PLTS | | |
| | | | |
| | THIS SHIPMENT CONTAINS NO SOLID WOOD PACKAGING MATERIALS | | |
| | HBL# HKG00497679 | | |
| | SCAC# AIWL | | |

047520028911

# COMBINED TRANSPORT BILL OF LADING

Notwithstanding the heading "Combined Transport Bill of Lading," the provisions set out and referred to in this document shall also apply if the transport as described on the face of the Bill of Lading is performed by one mode of transport only.  These provisions constitute a contract between Merchant and Carrier.

**(1)   CLAUSE PARAMOUNT:**

All carriage under this Bill of Lading to or from the United States shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, 46 U.S.C. sections 1300-1315 (hereafter, "COGSA").  Carriage to or from Canada shall have effect under the Carriage of Goods by Water Act of Canada ("COGWA").  All carriage to and from other States shall be governed by the law of any state making the Hague Rules or Hague-Visby Rules compulsorily applicable to this Bill of Lading or if there be no such law, in accordance with the Hague Rules.  The provisions of applicable law as set forth above shall apply to carriage of goods by inland waterways and reference to carriage by sea in such Rules or legislation shall be deemed to include reference to inland waterways.  Except as may be otherwise specifically provided herein, said law shall govern before the goods are loaded on and after they are discharged from the vessel whether the goods are carried on deck or under deck and throughout the entire time the goods are in the custody of Carrier.

**(2)   DEFINITIONS:**

2.1   "Ship" means the vessel named in this Bill of Lading, or any conveyance owned, chartered, or operated by Carrier or used by Carrier for the performance of this contract.

2.2   "Carrier" means AIT Worldwide Logistics, Inc. on whose behalf this Bill of Lading has been signed.

2.3   "Merchant" includes the Shipper, the Receiver, the Consignor, the Consignee, the Holder of this Bill of Lading and any person having a present or future interest in the Goods or any person acting on behalf of any of the above-mentioned persons.

2.4   "Package" is the largest individual unit of partially or completely covered or contained cargo made up by or for the Shipper which is delivered and entrusted to Carrier, including palletized units and each container stuffed and sealed by the Shipper or on its behalf, although the Shipper may have furnished a description of the contents of such sealed container on this bill of lading.

2.5   "Container" includes any container, trailer, transportable tank, lift van, flat, pallet, or any similar article of transport used to consolidate goods.

2.6   "Carrier's container or carrier's equipment" includes containers or equipment owned, leased or used by Carrier in the transportation of Merchant's goods.

2.7   "Goods" mean the cargo described on the face of this Bill of Lading and, if the cargo is packed into container(s) supplied or furnished by or on behalf of the Merchant, include the container(s) as well.

**(3)   SUBCONTRACTING:**

Carrier shall be entitled to subcontract directly or indirectly on any terms the whole or any part of the handling, storage, or carriage of the goods and all duties undertaken by Carrier in relation to the goods.  Every servant, agent, subcontractor (including sub-subcontractors), or other person whose services have been used to perform this contract shall be entitled to the rights, exemptions from, or limitations of, liability, defenses and immunities set forth herein.  For these purposes, Carrier shall be deemed to be acting as agent or trustee for such servants, agents, subcontractors, or other persons who shall be deemed to be

parties to this contract.

**(4)     ROUTE OF TRANSPORT:**

Carrier is entitled to perform the transport in any reasonable manner and by any reasonable means, methods and routes.  The Ship shall have the liberty, either with or without the goods on board, to at any time, adjust navigational instruments, make trial trips, dry dock, go to repair yards, shift berths, take in fuel or stores, embark or disembark any persons, carry contraband and hazardous goods, sail with or without pilots and save or attempt to save life or property.  Delays resulting from such activities shall not be deemed a deviation.

**(5)     HINDRANCES AFFECTING PERFORMANCE:**

5.1     Carrier shall use reasonable endeavors to complete transport and to deliver the goods at the place designated for delivery.

5.2     If at any time the performance of this contract as evidenced by this Bill of Lading in the opinion of Carrier is or will be affected by any hindrance, risk, delay, injury, difficulty or disadvantage of any kind, including strike, and if by virtue of the above it has rendered or is likely to render it in any way unsafe, impracticable, unlawful, or against the interest of Carrier to complete the performance of the contract, Carrier, whether or not the transport is commenced, may without notice to Merchant elect to:  (a) treat the performance of this contract as terminated and place the goods at Merchant's disposal at any place Carrier shall deem safe and convenient, or (b) deliver the goods at the place of delivery.

In any event, Carrier shall be entitled to, and Merchant shall pay, full freight for any goods received for transportation and additional compensation for extra costs and expenses resulting from the circumstances referred to above.

5.3     If, after storage, discharge, or any actions according to sub-part 5.2 above Carrier makes arrangements to store and/or forward the goods, it is agreed that he shall do so only as agent for and at the sole risk and expense of Merchant without any liability whatsoever in respect of such agency.

5.4     Carrier, in addition to all other liberties provided for in this Article, shall have liberty to comply with orders, directions, regulations or suggestions as to navigation or the carriage or handling of the goods or the ship howsoever given, by any actual or purported government or public authority, or by any committee or person having under the terms of any insurance on the Ship, the right to give such order, direction, regulation, or suggestion.  If by reason of and/or in compliance with any such order, direction, regulation, or suggestions, anything is done or is not done the same shall be deemed to be included within the contract of carriage and shall not be a deviation.

**(6)     BASIC LIABILITY:**

6.1     Carrier shall be liable for loss of or damage to the goods occurring between the time when it takes goods into its custody and the time of delivery but shall not be liable for any consequential or special damages arising from such loss or damage.

6.2     If it is established that the loss of or damage to the goods occurred during sea carriage, liability shall be governed by the legal rules applicable as provided in Section 1 of this Bill of Lading.

6.3     Notwithstanding Section 1 of this Bill of Lading, if the loss or damage occurred not during sea carriage and it can be proved where the loss or damage occurred, the liability of Carrier in respect of such loss or damage shall be determined by the provisions contained in any international convention or national law, which provisions:

(a) cannot be departed from by private contract to the detriment of Merchant, and

(b) would have applied if Merchant had made a separate and direct contract with Carrier in respect of the particular stage of transport where the loss or damage occurred and received as evidence thereof any particular document which must be issued in order to make such international convention or national law applicable;

(c) where (a) or (b) above do not apply, any liability of Carrier shall be limited to the amount provided in accordance with Section 7 of this Bill of Lading.

6.4 If it cannot be determined when the loss of or damage to the goods occurred, liability shall be governed as provided in Section 6.2 above.

6.5 Carrier does not undertake that the goods shall be delivered at any particular time or for any particular market and shall not be liable for any direct or indirect losses caused by any delay.

6.6 Carrier shall not be liable for any loss or damage arising from:

(a) an act or omission of Merchant or person other than Carrier acting on behalf of Merchant from whom Carrier took the goods in charge,

(b) compliance with the instructions of any person authorized to give them,

(c) handling, loading, stowage or unloading of the goods by or on behalf of Merchant,

(d) inherent vice of the goods,

(e) lack or insufficiency of or defective condition of packing in the case of goods, which by their nature are liable to wastage or damage when not packed or when not properly packed,

(f) insufficiency or inadequacy of marks or numbers on the goods, coverings or unit loads,

(g) fire, unless caused by actual fault or privity of Carrier,

(h) any cause or event which Carrier could not avoid and the consequences of which he could not prevent by the exercise of due diligence.

6.7 When Carrier pays claims to Merchant, Carrier shall automatically be subrogated to all rights of Merchant against all others, including Inland Carriers, on account of the losses or damages for which such claims are paid.

6.8 The defenses and limits of liability provided for in this Bill of Lading shall apply in any action or claim against Carrier relating to the goods, or the receipt, transportation, storage or delivery thereof, whether the action be founded in contract, tort or otherwise.

**(7) COMPENSATION FOR LOSS AND DAMAGE:**

7.1 Unless Merchant declares a higher value as provided below, Carrier's liability for compensation for loss of or damage to goods shall be limited as follows: (a) for loss or damage occurring during any portion of the carriage governed by COGSA by force of law, Carrier's liability shall in no case exceed the amount of US$500 per package or, for goods not in packages, per customary freight unit; (b) for loss or damage occurring during surface transportation in Mexico, Carrier's liability shall not exceed US$0.10 per pound of

the portion of the Goods adversely affected; (c) for loss or damage occurring during any portion of the carriage when the foregoing limitation provisions are inapplicable, including periods of surface transportation in other regions and any portion of the carriage where COGSA, COGWA, the Hague Rules, or the Hague Visby Rules are otherwise incorporated herein, but are not applicable by force of law, Carrier's liability shall be limited to the lesser of US$500 per package or US$0.50 per pound of the portion of the Goods adversely affected. When it cannot be ascertained at what stage of the carriage the loss or damage occurred, it shall be presumed to have occurred during periods of surface transportation. Carrier shall also be entitled to full benefits of the laws and regulations of any country and the provisions of the contracts of any subcontractor that may be applicable to the Goods before loading or after discharge of the vessel, including all defenses and exclusions set forth therein and any limitations that are lower than those set forth herein.

The shipper or Merchant, with the consent of Carrier, may avoid these limitations, or any other limitation imposed by applicable law to the extent permitted thereby, by declaring a higher value for the Goods in the space provided on the front of this Bill of Lading and paying extra freight per Carrier's tariff, in which case such higher value shall be the limit of Carrier's liability. Any partial loss or damage shall be adjusted pro rata on the basis of such declared value.

Where a container is stuffed by Shipper or on its behalf, and the container is sealed when received by Carrier for shipment, Carrier's liability will be limited to US$500 with respect to the contents of each such container, except when the Shipper declares the value on the face hereof and pays additional charges on such declared value as stated in Carrier's tariff. The freight charged on sealed containers when no higher valuation is declared by the Shipper is based on a value of US$500 per container. However, Carrier shall not, in any case, be liable for an amount greater than the actual loss to the person entitled to make the claim. Carrier shall have the option of replacing lost goods or repairing damaged goods.

7.2     In any case where Carrier's liability for compensation may exceed the amounts set forth in Section 7.1 above, compensation shall be calculated by reference to the value of the goods, according to their current market price, at the time and place they are delivered, or should have been delivered, in accordance with this contract.

7.3     If the value of the goods is less than US$500 per package or per customary freight unit, their value for compensation purposes shall be deemed to be the invoice value, plus freight and insurance, if paid.

7.4     Carrier shall not be liable to any extent for any loss of or damage to or in connection with precious metals, stones, or chemicals, jewelry, currency, negotiable instruments, securities, writings, documents, works of art, curios, heirlooms, or any other valuable goods, including goods having particular value only for Merchant, unless the true nature and value of the goods have been declared in writing by Merchant before receipt of the goods by the Carrier or Inland Carrier, the same is inserted on the face of this Bill of Lading and additional freight has been paid as required.

7.5     Carrier will not arrange for insurance on the goods except upon express instructions from the Consignor and then only at Consignor's expense and presentation of a declaration of value for insurance purposes prior to shipment.

7.6     The liability of Carrier and its affiliates arising from agency (non-carrier) services, including, but not limited to, export/import-related services and with respect to any fines or penalties imposed, is limited to circumstances of sole independent negligence and to US$50.00 per entry or shipment.

**(8)     DESCRIPTION OF GOODS AND INFORMATION FOR REGULATORY COMPLIANCE:**

Carrier is responsible for the collection and transmittal of certain information prior to lading of the Goods in

order to comply with applicable laws, treaties, rules and regulations promulgated by the countries of origin and destination (collectively "Applicable Law"), including, but not limited to, those contained in the Safety of Life at Sea Convention ("SOLAS"), and applicable customs regulations. Merchant shall furnish Carrier with the information necessary to achieve compliance with Applicable Law, including, without limitation, precise commodity descriptions, numbers and quantities of the lowest external packaging unit, the shipper's complete name and address, the consignee's or the owner's or owner's representative's complete name and address, hazardous materials codes, container seal numbers, and verified shipment weights in accordance with SOLAS. For these, and other purposes, Carrier relies on information provided by Merchant in a timely fashion. Merchant warrants to Carrier that all particulars of the goods, including, without limitation, the precise descriptions, marks, number, quantity, weight, seal numbers, identities of shipper and consignee, hazardous materials codes, and verified shipment weights furnished by Merchant are correct and Merchant shall indemnify and hold harmless Carrier against all claims, penalties, losses or damages arising from any inaccuracy or lack of timely presentation of such information.

**(9)　CARRIER'S CONTAINERS:**

If goods are received by Carrier not already packed in containers, Carrier may pack them in any type container. Merchant shall be liable to Carrier for damage to Carrier's containers or equipment if such damage occurs while such equipment is in control of Merchant or his agents. Merchant indemnifies Carrier for any damage or injury to persons or property caused by Carrier's containers or equipment during handling by or when in possession or control of Merchant.

**(10)　CONTAINER PACKED BY MERCHANT:**

If Carrier receives the goods already packed into containers:

1. This Bill of Lading is prima facie evidence of the receipt of the particular number of containers set forth, and that number only. Carrier accepts no responsibility with respect to the order and condition of the contents of the containers;

2. Merchant warrants that the stowage and seals of the containers are safe and proper and suitable for handling and carriage and indemnifies Carrier for any injury, loss or damage caused by breach of this warranty;

3. Delivery shall be deemed as full and complete performance when the containers are delivered by Carrier with the seals intact; and

4. Carrier has the right but not the obligation to open and inspect the containers at any time without notice to Merchant, and expenses resulting from such inspections shall be borne by Merchant; and

5. Merchant shall inspect containers before stuffing them and the use of the containers shall be prima facie evidence of their being sound and suitable for use.

**(11)　DANGEROUS GOODS:**

11.1　Merchant may not tender goods of a dangerous nature without written application to Carrier and Carrier's acceptance of the same. In the application, Merchant must identify the nature of the goods with reasonable specificity as well as the names and addresses of the shippers and consignees.

11.2　Merchant shall distinctly and permanently mark the nature of the goods on the outside of the package and container in a form and manner as required by law and shall submit to Carrier or to the appropriate authorities all necessary documents required by law or by Carrier for the transportation of such

goods.

11.3    If the goods subsequently, in the judgment of Carrier, become a danger to Carrier, the Ship, or other cargo, Carrier may dispose of the goods without compensation to Merchant and Merchant shall indemnify Carrier for any loss or expenses arising from such action.

**(12)    DECK CARGO:**

Carrier has the right to carry the goods in any container under deck or on deck.  Carrier is not required to note "on deck stowage" on the face of this Bill of Lading and goods so carried shall constitute under deck stowage for all purposes including General Average.  Except as otherwise provided by any law applicable to this contract, if this Bill of Lading states that the cargo is stowed on deck, then Carrier shall not be liable for any non-delivery, misdelivery, delay or loss to goods carried on deck, whether or not caused by Carrier's negligence or the ship's unseaworthiness.

**(13)    HEAVY LIFT:**

13.1    Single packages with a weight exceeding 2,240 pounds gross not presented to Carrier in enclosed containers must be declared in writing by Merchant before receipt of the packages by Carrier.  The weight of such packages must be clearly and durably marked on the outside of the package in letters and figures not less than two inches high.

13.2    If Merchant fails to comply with the above provisions, Carrier shall not be liable for any loss of or damage to the goods, persons or property, and Merchant shall be liable for any loss of or damage to persons or property resulting from such failure and Merchant shall indemnify Carrier against any loss or liability suffered or incurred by Carrier as a result of such failure.

13.3    Merchant agrees to comply with all laws or regulations concerning overweight containers and Merchant shall indemnify Carrier against any loss or liability suffered or incurred by Carrier as a result of Merchant's failure to comply with such laws or regulations.

**(14)    DELIVERY:**

14.1    Carrier shall have the right to deliver the goods at any time at any place designated by Carrier within the commercial or geographic limits of the port of discharge or place of delivery shown in this Bill of Lading.  Carrier's responsibility shall cease when delivery has been made to Merchant, any person authorized by Merchant to receive the goods, or in any manner or to any other person in accordance with the custom and usage of the port of discharge or place of delivery.  If goods should remain in Carrier's custody after discharge from the ship and possession is not taken by Merchant, after notice, within the time allowed in Carrier's applicable tariff, the goods may be considered to have been delivered to Merchant or abandoned at Carrier's option, and may be disposed of or stored at Merchant's expense.

14.2    This Bill of Lading shall only be a negotiable document of title if consigned "to order," or order of a named consignee.  If negotiable, an original bill of lading, properly endorsed must be surrendered when the Goods are delivered.  Subject to applicable law, if the person receiving the Goods wishes to take delivery without surrender of an original endorsed bill of lading, and if Carrier agrees in its sole discretion to deliver the goods without such surrender, the person receiving the Goods agrees to indemnify Carrier against all damages which Carrier may be liable to pay as a result of delivering the Goods without such surrender. Upon surrender of one original bill of lading, all other original bills of lading will be immediately void. Negotiable bills of lading will in all events become void six months after date of issuance, provided Carrier shall continue to be entitled to all rights and limitations of liability herein.

14.3    This document shall constitute a non-negotiable bill of lading if consigned directly to a nominated

person or entity and not consigned "to order," or order of a named consignee. Delivery of the Goods under a non-negotiable bill of lading may be made, at the sole discretion of the Carrier, to the nominated consignee without surrender of an original counterpart; such delivery shall constitute due delivery hereunder; Carrier may, but is under no obligation to, demand the surrender of this document before delivering the Goods. In the event of any ambiguity, this document shall constitute a non-negotiable bill of lading, and Carrier may, but is not required to, demand its original surrender before the release of the Goods. The consignee receiving the Goods in all events represents their entitlement to such receipt and as such agrees to indemnify Carrier against all damages which Carrier may be liable to pay as a result of releasing the Goods to the consignee's custody.

**(15) NOTICE OF CLAIM:**

Written notice of claims for loss of or damage to goods occurring or presumed to have occurred while in the custody of Carrier must be given to Carrier at the port of discharge before or at the time of removal of the goods by one entitled to delivery. If such notice is not provided, removal shall be prima facie evidence of delivery in good condition by Carrier. If such loss or damage is not apparent, Carrier must be given written notice within 3 days of the delivery. All claims hereunder must be filed against Carrier in writing (i) via post or courier at the following address: AIT Worldwide Logistics, Inc., Attn: Cargo Claims Department, 701 N. Rohlwing Road, Itasca, Illinois, 60143, U.S.A., or (ii) electronically at ClaimsAdmin@aitworldwide.com.

**(16) FREIGHT AND CHARGES:**

16.1 Freight may be calculated on the basis of the particulars of the goods furnished by Merchant, who shall be deemed to have guaranteed to Carrier the accuracy of the contents, weight, measure, or value as furnished by him at the time of receipt of the goods by the Carrier or Inland Carrier, but Carrier for the purpose of ascertaining the actual particulars may at any time and at the risk and expense of Merchant, open the container or package and examine contents, weight, measure, and value of the goods. In case of incorrect declaration of the contents, weight, measure and or value of the goods, Merchant shall be liable for and bound to pay to Carrier: (a) the balance of freight between the freight charged and that which would have been due had the correct details been given, plus (b) expenses incurred in determining the correct details, plus (c) as liquidated and ascertained damages, an additional sum equal to the correct freight. Quotations as to fees, rates of duty, freight charges, insurance premiums or other charges given by Carrier to Merchant are for informational purposes only and are subject to change without notice and shall not under any circumstances be binding upon Carrier unless Carrier in writing specifically undertakes the handling of transportation of the shipment at a specific rate and that rate is filed in Carrier's tariff.

16.2 Freight shall be deemed earned on receipt of goods by Carrier, the goods lost or not lost, whether the freight is required to be prepaid or collected at destination. Payment shall be in full and in cash without any offset, counterclaim, or deduction, in the currency named in this Bill of Lading, or another currency at Carrier's option. Interest at 1-1/2% per month shall run from the date when freight and charges are due. Payment of freight charges to a freight forwarder, broker or anyone other than directly to Carrier shall not be deemed payment to the Carrier. Merchant shall remain liable for all charges hereunder notwithstanding any extension of credit to the freight forwarder or broker by Carrier. Full freight shall be paid on damaged or unsound goods. Returned checks shall be subject to a $100 fee.

16.3 Merchant shall be liable for all dues, duties, fines, taxes and charges, including consular fees, levied on the goods. Merchant shall be liable for return freight and charges on the goods if they are refused export or import by any governmental authority. Merchant shall be liable for all demurrage or detention charges imposed on the goods or their containers by third parties.

16.4 The Shipper, consignee, holder hereof, and owner of the goods, and their principals, shall be jointly and severally liable to Carrier for the payment of all freight and charges, including advances and shall, in

any referral for collection or action for monies due to Carrier, upon recovery by Carrier, pay the expenses of collection and litigation, including reasonable attorneys' fees. This provision shall apply regardless of whether the front of this bill of lading has been marked "prepaid" or "freight prepaid" so long as freight and charges remain unpaid.

16.5   The Shipper, consignee, holder hereof, and owner of the goods, and their principals, shall jointly and severally indemnify Carrier for all claims, fines, penalties, damages, costs and other amounts which may be incurred or imposed upon Carrier by reason of any breach of any of the provisions of this Bill of Lading or of any statutory or regulatory requirements.

**(17)   LIEN:**

Carrier shall have a lien on any and all property (and documents relating thereto) of Merchant, in its actual or constructive possession, custody or control or en route, which lien shall survive delivery, for all charges, expenses or advances owed to Carrier in connection with the shipment on which the lien is claimed, prior shipments of Merchant, or both.  Carrier may sell at public auction or private sale, upon 10 days written notice, registered mail to Merchant, the goods, wares and/or merchandise or so much as may be necessary to satisfy such lien and the costs of recovery, including the value of management time and effort, and apply the net proceeds of such sale to the payment of the amount due Carrier. The surplus, if any, from such sale shall be transmitted to Merchant, and Merchant shall be liable for any deficiency in the sale.

**(18)   TIME BAR:**

Carrier shall be discharged from all liability for loss of or damage to goods unless suit is brought within one (1) year after delivery of the goods or the date when the goods should have been delivered.  Suit shall not be deemed brought against Carrier until jurisdiction shall have been obtained over Carrier by service of summons. The time bar for overcharge claims shall be 36 months.

**(19)   JURISDICTION:**

This contract is to be governed by the laws of the United States and the State of Illinois, with the exception of its conflict of laws principles. All disputes arising from the shipment to which this bill of lading pertains may only be instituted in the United States District Court for the Northern District of Illinois, which shall have exclusive jurisdiction and venue over such disputes. Merchant and Carrier agree that they are each personally subject to the jurisdiction of that court.

**(20)   GENERAL AVERAGE:**

20.1   General Average shall be adjusted at New York, or any other port at Carrier's option, according to the York-Antwerp Rules of 1994. The General Average statement shall be prepared by adjusters appointed by Carrier.

20.2   In the event of accident, damage, danger or disaster after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for the consequence of which Carrier is not responsible by statute, contract or otherwise, Merchant shall contribute with Carrier in General Average to the payment of any sacrifice, loss or expense of a General Average nature that may be made or incurred, and shall pay salvage or special charges incurred in respect of the goods.  If a salving vessel is owned or operated by Carrier, salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers.

**(21)   BOTH-TO-BLAME COLLISION CLAUSE:**

If the ship comes into collision with another vessel as a result of negligence of the other vessel and any

negligence or fault on the part of Carrier or its servants or subcontractors, Merchant shall indemnify Carrier against all loss or liability to the other or non-carrying vessel or her owners, insofar as such loss or liability represents loss of, or damage to, or any claim whatsoever of Merchant paid or payable by the other or non-carrying vessel or her owners to Merchant and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying ship or her owner.  This provision shall apply as well where the owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault with respect to a collision or contact.

**(22)     CARRIERS' TARIFFS:**

The goods carried under this Bill of Lading are also subject to all the terms and conditions of tariff(s) published pursuant to the regulations of the United States Federal Maritime Commission or any other regulatory agency which governs a particular portion of the carriage and the terms are incorporated herein as part of the terms and conditions of this Bill of Lading.  Copies of Carrier's tariff(s) may be obtained from Carrier's tariff website, the address of which is set forth on the U.S. Federal Maritime Commission's website at www.fmc.gov.

**(23)     PERISHABLE CARGO:**

23.1     Goods of a perishable nature shall be carried in ordinary containers without special protection, services or other measures unless there is noted on the reverse side of this Bill of Lading that the goods will be carried in a refrigerated, heated, electrically ventilated or otherwise specially equipped container or are to receive special attention in any way.  Carrier shall not be liable for any loss of or damage to goods in a special hold or container arising from latent defects, breakdown, or stoppage of the refrigeration, ventilation or heating machinery, insulation, ship's plant, or other such apparatus of the vessel or container, provided that Carrier shall before or at the beginning of the transport exercise due diligence to maintain the special hold or container in an efficient state.

23.2     Merchant undertakes not to tender for transportation any goods that require refrigeration without given written notice of their nature and the required temperature setting of the thermostatic controls before receipt of the goods by Carrier.  In case of refrigerated containers packed by or on behalf of Merchant, Merchant warrants that the goods have been properly stowed in the container and that the thermostatic controls have been adequately set before receipt of the goods by Carrier.

23.3     Merchant's attention is drawn to the fact that refrigerated containers are not designed to freeze down cargo which has not been presented for stuffing at or below its designated carrying temperature.  Carrier shall not be responsible for the consequences of cargo tendered at a higher temperature than that required for the transportation.

23.4     If the above requirements are not complied with, Carrier shall not be liable for any loss of or damage to the goods whatsoever.


**(24)     SEVERABILITY:**

The terms of this Bill of Lading shall be severable, and, if any part or term hereof shall be held invalid, such holding shall not affect the validity or enforceability of any other part or term hereof.

**(25) VARIATION OF THE CONTRACT:**

No servant or agent of Carrier shall have power to waive or vary any of the terms hereof unless such variation is in writing and is specifically authorized or ratified in writing by Carrier.